**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | | |
|---|---|---|
| OMAR GRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: |
| | ) | |
| v. | ) | |
| | ) | |
| HCA HEALTH SERVICES OF | ) | |
| FLORIDA, INC. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SARASOTA DOCTORS | ) | |
| HOSPITAL, INC., d/b/a HCA | ) | |
| FLORIDA DOCTORS | ) | |
| HOSPITAL, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL
(JURY TRIAL DEMANDED)**

Plaintiff, Omar Graham ("Plaintiff" or "Mr. Graham"), sues Defendants

HCA Health Services of Florida, Inc. ("HCA Florida Services") and Sarasota

Doctors Hospital, Inc., d/b/a HCA Florida Doctors Hospital ("Sarasota

Doctors Hospital" or "Hospital"), and alleges as follows:

## I.   JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331.

2.     This Court has jurisdiction over Plaintiff's Title VII claims pursuant to 42 U.S.C. § 2000e et seq.

3.     This Court has jurisdiction over Plaintiff's claims under 42 U.S.C. § 1981.

4.     This Court has supplemental jurisdiction over Plaintiff's Florida Civil Rights Act claims pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to these claims occurred in this District and Defendants transact business in this District.

## II.   PARTIES

6.     Plaintiff Omar Graham is an individual residing in Florida.

7.     Defendant SARASOTA DOCTORS HOSPITAL, INC. is a Florida corporation doing business in Florida and operated the Sarasota, Florida hospital facility held out in commerce as HCA Florida Doctors Hospital (the "Facility"), where Plaintiff worked and where the discriminatory and retaliatory acts occurred.

8.      Defendant HCA HEALTH SERVICES OF FLORIDA, INC. is a Florida corporation doing business in Florida and is a separate legal entity from Sarasota Doctors Hospital, Inc.

9.      At all relevant times, Sarasota Doctors Hospital and HCA Florida Services were "employers" within the meaning of Title VII and the Florida Civil Rights Act and were subject to 42 U.S.C. § 1981.

10.     Upon information and belief, HCA Florida Services exercised control over and/or had the right to control material aspects of Plaintiff's employment at the Facility and/or acted as a joint employer and/or integrated enterprise with Sarasota Doctors Hospital.

III.    ADMINISTRATIVE EXHAUSTION (TITLE VII/FCRA)

11.     Plaintiff timely filed a Charge of Discrimination with the EEOC, assigned Charge No. 511-2026-01392.

12.     The EEOC issued a Dismissal and Notice of Rights (Notice of Right to Sue).

13.     Plaintiff received the Notice of Right to Sue on May 20, 2026.

14.     This action is filed within ninety (90) days of May 20, 2026.

IV.    RELEVANT FACTS

15.     Plaintiff is Black/African American.

16.     Plaintiff was hired on or about November 30, 2020 and worked as an Occupational Therapist at the Facility.

17.     Plaintiff performed his job duties competently and was qualified for his position.

18.     In or around June 2025, Plaintiff began working under a newly hired Director of Rehabilitation, Tiffany Weck ("Weck").

19.     When Weck became Plaintiff's supervisor, Plaintiff was the only full-time Black team member.

20.     The Facility used a scheduling/availability list that impacted work assignments and hours.

21.     Beginning on or about July 22, 2025 and continuing through approximately January 2026, Weck moved Plaintiff to the bottom of the list and, at times, scratched Plaintiff off the list, reducing Plaintiff's work opportunities and wages.

22.     During the same period, Weck permitted non-Black employees (including White and Asian employees) to alter schedules without being placed at the bottom of the list as policy/practice required, while Plaintiff remained at the bottom and was not afforded comparable flexibility.

23.     On or about July 23, 2025, Plaintiff complained to Kelly Malloy (then Chief Operating Officer) about the list placement and disparate treatment.

24.     After Plaintiff complained, Plaintiff's hours and work opportunities were reduced and adverse job actions increased.

25.     In approximately October or November 2025, Plaintiff raised concerns to the Hospital's CEO Joseph Rudisill regarding patient services being cut and directives to ignore doctors' orders after 6:30 p.m., raising patient-safety and ethical concerns.

26.     Plaintiff also complained to Human Resources and through ethics/compliance channels about Weck's conduct, disparate treatment, and retaliation.

27.     After Plaintiff engaged in protected activity, Weck increased scrutiny and discipline against Plaintiff.

28.     Plaintiff received multiple written reprimands which Plaintiff contends were unsupported and/or disproportionately severe as compared to similarly situated non-Black employees.

29.     Plaintiff was disciplined for going to a company-sponsored food truck/parking area during work hours under circumstances where similarly situated non-Black employees engaged in similar conduct without discipline.

30.    Plaintiff was informed by members of the therapy department that, before the series of written disciplinary actions against Plaintiff, Weck stated, in substance, that if she could obtain four write-ups against an employee, she could terminate that employee. Plaintiff's co-workers, including Megan King (Speech Therapist), Jason Mason (Occupational Therapist and Supervisor of Rehabilitation), Rhon Vitug (Physical Therapist), Kyle McGreight (Occupational Therapist) and others heard Ms. Weck's statement.

31.    On January 12, 2026, Plaintiff was involved in an incident concerning whether occupational therapists could treat a particular patient. Although Weck had instructed the therapy group that occupational therapists could not see the patient, Plaintiff contacted Bill English ("English"), the administrator on call, who gave Plaintiff permission to see the patient.

32.    Weck subsequently accused Plaintiff of insubordination in connection with the January 12, 2026 incident.

33.    Between approximately January 13 and January 20, 2026, Weck requested written statements concerning the incident from Marco Machado ("Machado"), a physical therapy assistant, and Megan Reeves ("Reeves"), an occupational therapist.

34.　　Machado and Reeves subsequently informed Plaintiff that they stated in their written statements that Plaintiff had not been insubordinate.

35.　　Upon information and belief, Machado and Reeves provided their written statements directly to Weck.Plaintiff was discharged from employment at Sarasota Doctors Hospital on April 22, 2026. At the time of his discharge, Plaintiff continued to work at another HCA-affiliated facility, HCA Florida Blake Hospital ("HCA Blake").

36.　　On January 21, 2026, Plaintiff received written discipline for alleged insubordination arising from the January 12, 2026 incident.

37.　　Upon information and belief, the statements submitted by Machado and Reeves were not disclosed to Plaintiff, were not identified in the January 21, 2026 written discipline, and/or were not fairly considered during the disciplinary decision-making process.

38.　　Upon information and belief, Weck withheld, disregarded, or failed to transmit the statements to the persons responsible for reviewing the incident, even though the statements contradicted or materially undermined the accusation that Plaintiff had been insubordinate.

39.　　The authorization English provided to Plaintiff and the written statements provided by Machado and Reeves contradicted or materially

undermined the allegation that Plaintiff had willfully disregarded management's instructions.

40.    Defendants' failure to disclose and fairly consider this evidence supports Plaintiff's contention that the insubordination accusation was unsupported, predetermined, and/or used as a pretext for discrimination or retaliation.

41.    Plaintiff was disciplined following a separate patient-safety incident in which Plaintiff acted to prevent a fall and was recognized by nursing staff. Plaintiff contends that the discipline imposed was excessive and inconsistent with how non-Black employees were treated under comparable circumstances.

42.    Plaintiff was also disciplined following a patient-fall incident. Plaintiff contends that similarly situated non-Black employees were not disciplined for comparable or more serious patient-safety events.

43.    For months, Weck repeatedly entered Plaintiff's workspace and stared at Plaintiff in a manner Plaintiff experienced as intimidating and harassing.

44.    Plaintiff reported the staring, harassment, disparate treatment, retaliation, and related concerns to Human Resources and through

Defendants' ethics and compliance channels and identified witnesses with knowledge of the relevant events.

45.   Defendants failed to take prompt and effective remedial action.

46.   Plaintiff's complaints were investigated through HCA's ethics and corporate investigation process. Thomas Cook ("Cook") was the HCA corporate representative involved in the investigation, and English and Tina Barton ("Barton") participated in the investigation at the Hospital.

47.   Plaintiff communicated with English concerning the investigation. English informed Plaintiff that English had submitted the final investigation results to HCA corporate.

48.   Notwithstanding English's representation, neither Defendant, Cook, nor any other HCA representative provided Plaintiff with the investigation's final findings, conclusions, outcome, or supporting rationale.

49.   Defendants' failure to communicate the final investigation results prevented Plaintiff from understanding and responding to Defendants' conclusions and from determining whether Defendants had meaningfully investigated or corrected the conduct Plaintiff reported.

50.   Plaintiff alleges the failure to provide the investigation results as evidence of the incomplete and nontransparent manner in which Defendants handled his complaints and discipline, and as evidence supporting Plaintiff's

allegations of pretext, discrimination, retaliation, and failure to take effective corrective action.

51.    Plaintiff was discharged from employment at Sarasota Doctors Hospital on April 22, 2026. At the time of his discharge, Plaintiff continued to work at another HCA-affiliated facility, HCA Florida Blake Hospital ("HCA Blake").

52.    Weck regularly conducted therapy-department huddles on Tuesdays and Thursdays. At a therapy-department huddle shortly after Plaintiff's discharge, Weck informed the therapy group that Plaintiff was no longer employed at Sarasota Doctors Hospital.

53.    At or in connection with that huddle, Weck also announced to the therapy group, in substance, that an employee discharged from one HCA facility could not work at any HCA facility for more than five years.

54.    Plaintiff was not present for Weck's verbal announcement. Multiple employees subsequently reported Weck's statement to Plaintiff after learning that Plaintiff continued to work at HCA Blake.

55.    Witnesses with knowledge of the huddle and/or Weck's announcement include Megan King, a speech therapist; Jessica Mason, an occupational therapist and rehabilitation supervisor; Rhon Vitug, a physical

therapist; and Kyle McCreight, an occupational therapist, among other members of the therapy department.

56.    Plaintiff retained an email containing huddle notes issued shortly after his discharge. The written notes state that Plaintiff's employment had been separated but do not memorialize Weck's additional verbal statement concerning the purported HCA-wide employment restriction.

57.    Upon information and belief, Weck attempted to have Plaintiff designated as ineligible for employment at HCA facilities beyond Sarasota Doctors Hospital, notwithstanding Plaintiff's continued employment at HCA Blake.

58.    In approximately early May 2026, Plaintiff discovered that he could no longer access his HCA HealthStream account. Plaintiff contacted HCA information technology personnel and was instructed to contact HCA Blake's education department. Plaintiff thereafter made telephone calls and sent emails seeking restoration of his HealthStream access.

59.    In May 2026, Plaintiff also discovered that his HCA identification credential had been changed. Plaintiff's previous identification credential was "ITF5644." When that credential no longer worked, Plaintiff

reviewed prior electronically generated documents and discovered that his identification credential appeared as "ITF56441."

60. Plaintiff had not requested or authorized the loss of his HealthStream access or the change to his identification credential. Upon information and belief, Defendants and/or HCA possess records identifying when the changes occurred, who requested them, and who implemented them. The interruption of Plaintiff's HealthStream access and change to his credential interfered with his ability to access systems and perform work-related functions at another HCA facility.

61. Upon information and belief, the purported HCA-wide employment restriction, interruption of Plaintiff's HealthStream access, and change to his identification credential were connected to his discharge from Sarasota Doctors Hospital and were intended to, or reasonably could, impair his continued or future employment within HCA.

62. Plaintiff alleges that these post-discharge actions constituted additional retaliation for his protected complaints and caused or threatened additional loss of employment opportunities, wages, benefits, and professional standing.

63. Upon information and belief, Weck recommended Plaintiff's discharge and/or materially influenced the discharge decision. The identities

of all final decisionmakers are presently unknown to Plaintiff and are within Defendants' possession, custody, or control.

64.    Plaintiff suffered damages including lost wages and benefits, emotional distress, impairment of employment opportunities, and consequential damages.

## V.    COUNTS

### COUNT I: TITLE VII RACE DISCRIMINATION
#### (disparate treatment against Sarasota Doctors Hospital, Inc., d/b/a HCA Florida Doctors Hospital)

65.    Plaintiff incorporates by reference paragraphs 6–7 and 15–64, that relate to Sarasota Doctors Hospital's alleged race discrimination, disparate treatment, disciplinary actions, and discharge of Plaintiff.

66.    Sarasota Doctors Hospital subjected Plaintiff to adverse employment actions, including reduced hours and work opportunities through scheduling manipulation, disproportionate and unsupported discipline, discharge, and other actions impairing Plaintiff's terms, conditions, and employment opportunities.

67.    The post-termination allegations are strongest as retaliation allegations, so Count I should not assert that every post-termination event was necessarily race discrimination.

68.    Sarasota Doctors Hospital treated similarly situated non-Black employees more favorably with respect to scheduling/list placement, discipline, and enforcement of policies.

69.    Sarasota Doctors Hospital's adverse actions were motivated in whole or in part by Plaintiff's race.

WHEREFORE, Plaintiff requests the relief stated in the Prayer for Relief.

## COUNT II: TITLE VII RACE DISCRIMINATION
### (disparate treatment against HCA Health Services of Florida, Inc.)

70.    Plaintiff incorporates by reference Plaintiff incorporates by reference paragraphs 8-10 and the factual allegations contained in paragraphs 15–64 that relate to HCA Florida Services' alleged race discrimination, disparate treatment, disciplinary actions, and discharge of Plaintiff.

71.    Plaintiff engaged in protected activity by complaining about race-based disparate treatment and discrimination to management, Human Resources, and Defendants' ethics and compliance channels.

72.    Sarasota Doctors Hospital took materially adverse actions against Plaintiff after and because of his protected activity, including

reducing his hours and work opportunities, escalating discipline and scrutiny, discharging him, attempting to impair his eligibility for employment at other HCA facilities, and causing, participating in, or ratifying post-discharge interference with the systems and credentials Plaintiff needed for his continued employment within HCA.

73.    A causal connection exists between Plaintiff's protected activity and the materially adverse actions, as demonstrated by the timing and sequence of those actions, the escalating pattern of discipline following Plaintiff's complaints, the irregularities in the disciplinary and investigative processes, the failure to consider or disclose favorable evidence, and the post-discharge actions affecting Plaintiff's continued employment.

74.    Without Plaintiff's protected activity, Sarasota Doctors Hospital would not have taken the materially adverse actions against Plaintiff.

WHEREFORE, Plaintiff requests the relief stated in the Prayer for Relief.

### COUNT III: TITLE VII RETALIATION
#### (against Sarasota Doctors Hospital, Inc., d/b/a HCA Florida Doctors Hospital)

75.    Plaintiff incorporates by reference paragraphs 8–10, 23–29, and the allegations concerning Plaintiff's complaints, Defendants' investigation,

*Graham v. HCA Health Services of Florida, Inc., et al.;* Case No.:
Complaint and Demand for Jury Trial; *Page 16 of 26*

Plaintiff's discipline and discharge, and the post-discharge actions affecting Plaintiff's continued or future employment within HCA.

76.   Plaintiff engaged in protected activity by complaining about race-based disparate treatment and discrimination to management, Human Resources, and Defendants' ethics and compliance channels.

77.   HCA Florida Services, as Plaintiff's employer, joint employer, and/or part of an integrated enterprise, and directly or through its agents or ratification, took, caused, participated in, or ratified materially adverse actions after Plaintiff's protected activity, including reductions in hours and work opportunities, escalated discipline and scrutiny, discharge, an attempted HCA-wide employment restriction, and interference with Plaintiff's post-discharge access to HCA systems and credentials.

78.   A causal connection exists between Plaintiff's protected activity and the materially adverse actions, as demonstrated by the timing and sequence of those actions, the escalating pattern of discipline, the irregularities in Defendants' disciplinary and investigative processes, the failure to consider or disclose favorable evidence, and the post-discharge actions affecting Plaintiff's continued employment.

79.    But for Plaintiff's protected activity, HCA Florida Services would not have taken, caused, participated in, or ratified the materially adverse actions against Plaintiff.

WHEREFORE, Plaintiff requests the relief stated in the Prayer for Relief.

## COUNT IV: TITLE VII RETALIATION
### (against HCA Health Services of Florida, Inc.)

80.    Plaintiff incorporates by reference paragraphs 8–10, 23–29, and the allegations concerning Plaintiff's complaints, Defendants' investigation, Plaintiff's discipline and discharge, and the post-discharge actions affecting Plaintiff's continued or future employment within HCA.

81.    Plaintiff engaged in protected activity by complaining about race-based disparate treatment and discrimination to management, Human Resources, and Defendants' ethics and compliance channels.

82.    HCA Florida Services, as Plaintiff's employer, joint employer, and/or part of an integrated enterprise, and directly or through its agents or ratification, took, caused, participated in, or ratified materially adverse actions after Plaintiff's protected activity, including reductions in hours and work opportunities, escalated discipline and scrutiny, discharge, an

attempted HCA-wide employment restriction, and interference with Plaintiff's post-discharge access to HCA systems and credentials.

83.     A causal connection exists between Plaintiff's protected activity and the materially adverse actions, as demonstrated by the timing and sequence of those actions, the escalating pattern of discipline, the irregularities in Defendants' disciplinary and investigative processes, the failure to consider or disclose favorable evidence, and the post-discharge actions affecting Plaintiff's continued employment.

84.     But for Plaintiff's protected activity, HCA Florida Services would not have taken, caused, participated in, or ratified the materially adverse actions against Plaintiff.

WHEREFORE, Plaintiff requests the relief stated in the Prayer for Relief.

### COUNT V: TITLE VII HOSTILE WORK ENVIRONMENT/HARASSMENT
### (against Sarasota Doctors Hospital, Inc.,
### d/b/a HCA Florida Doctors Hospital)

85.     Plaintiff incorporates by reference paragraphs 6–7 and 18–19 and 33–35 and 38.

86.     Plaintiff was subjected to unwelcome harassment at the Facility, including intimidating and humiliating conduct by Weck.

87.    The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

88.    Plaintiff reported the harassment, and Sarasota Doctors Hospital failed to take prompt and effective remedial action.

WHEREFORE, Plaintiff requests the relief stated in the Prayer for Relief.

## COUNT VI: TITLE VII HOSTILE WORK ENVIRONMENT/HARASSMENT
### (against HCA Health Services of Florida, Inc.)

89.    Plaintiff incorporates by reference paragraphs 8–10, 23–29, and the allegations concerning Plaintiff's complaints, Defendants' investigation, Plaintiff's discipline and discharge, and the post-discharge actions affecting Plaintiff's continued or future employment within HCA.

90.    Plaintiff engaged in protected activity by complaining about race-based disparate treatment and discrimination to management, Human Resources, and Defendants' ethics and compliance channels.

91.    HCA Florida Services, as Plaintiff's employer, joint employer, and/or part of an integrated enterprise, and directly or through its agents or ratification, took, caused, participated in, or ratified materially adverse actions

after Plaintiff's protected activity, including reductions in hours and work opportunities, escalated discipline and scrutiny, discharge, an attempted HCA-wide employment restriction, and interference with Plaintiff's post-discharge access to HCA systems and credentials.

WHEREFORE, Plaintiff requests the relief stated in the Prayer for Relief.

### COUNT VII: RACE DISCRIMINATION AND RETALIATION
### (42 U.S.C. § 1981, against Both Defendants)

92.     Plaintiff incorporates by reference paragraphs 6–10 and 15–16 and 20–22 and 23–26 and 27–32 and 36–38.

93.     Plaintiff's employment relationship included contractual rights protected by 42 U.S.C. § 1981, including the enjoyment of all benefits, privileges, terms, and conditions of employment.

94.     Defendants intentionally discriminated against Plaintiff because of race with respect to the terms and conditions of employment, including scheduling/hours, discipline, and discharge.

95.     Defendants retaliated against Plaintiff for opposing race discrimination, including through escalating discipline and scrutiny, discharge, an attempted HCA-wide restriction on Plaintiff's employment,

and interference with Plaintiff's access to systems and credentials needed for his continued employment within HCA.

96. Defendants' acts interfered with Plaintiff's right to make and enforce his employment contract on equal terms.

WHEREFORE, Plaintiff requests the relief stated in the Prayer for Relief, including compensatory damages, punitive damages, and attorneys' fees as permitted by law.

## COUNT VIII: FCRA RACE DISCRIMINATION (disparate treatment against Sarasota Doctors Hospital, Inc., d/b/a HCA Florida Doctors Hospital)

97. Plaintiff incorporates by reference paragraphs 6–7 and 15–22 and 27–32 and 36 and 38.

98. Sarasota Doctors Hospital discriminated against Plaintiff because of race, including disparate terms and conditions of employment and discharge, in violation of Fla. Stat. § 760.01 et seq.

WHEREFORE, Plaintiff requests the relief stated in the Prayer for Relief.

## COUNT IX — FCRA RACE DISCRIMINATION
### (disparate treatment against HCA Health Services of Florida, Inc.)

99.    Plaintiff incorporates by reference paragraphs 8–10 and 15–22 and 27–32 and 36 and 38.

100.    HCA Florida Services discriminated against Plaintiff because of race, including through acts taken directly and/or through agents and/or ratification, in violation of Fla. Stat. § 760.01 et seq.

WHEREFORE, Plaintiff requests the relief stated in the Prayer for Relief.

## COUNT X: FCRA RETALIATION
### (against Sarasota Doctors Hospital, Inc., d/b/a HCA Florida Doctors Hospital)

101.    Plaintiff incorporates by reference paragraphs 6–7 and 23–26 and 36–38.

102.    Plaintiff engaged in protected activity.

103.    Sarasota Doctors Hospital retaliated against Plaintiff for engaging in protected activity, including through reduced work opportunities, escalated discipline and scrutiny, discharge, an attempted restriction on Plaintiff's employment at other HCA facilities, and post-

discharge interference with Plaintiff's access to HCA systems and credentials, in violation of the FCRA.

WHEREFORE, Plaintiff requests the relief stated in the Prayer for Relief.

### COUNT XI — FCRA RETALIATION
### (against HCA Health Services of Florida, Inc.)

104. Plaintiff incorporates by reference paragraphs 8–10 and 23–26 and 36–38.

105. Plaintiff engaged in protected activity

106. HCA Florida Services retaliated against Plaintiff for engaging in protected activity, directly and/or through its agents, participation, or ratification, including through reduced work opportunities, escalated discipline and scrutiny, discharge, an attempted HCA-wide employment restriction, and post-discharge interference with Plaintiff's access to HCA systems and credentials, in violation of the FCRA.

WHEREFORE, Plaintiff requests the relief stated in the Prayer for Relief.

## COUNT XII: FCRA HOSTILE WORK ENVIRONMENT/HARASSMENT
### (against Sarasota Doctors Hospital, Inc.,
### d/b/a HCA Florida Doctors Hospital)

107.  Plaintiff incorporates by reference paragraphs 6–7 and 18–19 and 33–35 and 38.

108.  Plaintiff was subjected to unwelcome harassment that was severe or pervasive.

109.  Sarasota Doctors Hospital failed to take prompt and effective remedial action, in violation of the FCRA.

WHEREFORE, Plaintiff requests the relief stated in the Prayer for Relief.

## COUNT XIII: FCRA HOSTILE WORK ENVIRONMENT/HARASSMENT
### (against HCA Health Services of Florida, Inc.)

110.  Plaintiff incorporates by reference paragraphs 8–10 and 18–19 and 33–35 and 38.

111.  HCA Florida Services, as an employer/joint employer/integrated enterprise and/or through ratification, is liable for the hostile work environment in violation of the FCRA.

WHEREFORE, Plaintiff requests the relief stated in the Prayer for Relief.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants and requests:

A. Back pay, including lost wages, benefits, and other compensation;

B. Reinstatement; or, alternatively, front pay in lieu of reinstatement;

C. Compensatory damages, including emotional distress damages;

D. Punitive damages (where available, including under Title VII and § 1981 as applicable);

E. Pre-judgment and post-judgment interest;

F. Attorneys' fees and costs;

G. Injunctive and declaratory relief; and

H. Such other relief as the Court deems just and proper.

*Graham v. HCA Health Services of Florida, Inc., et al.;* Case No.:
Complaint and Demand for Jury Trial; *Page **26** of **26***

## VII.   JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated:        August 5, 2026

MIHOK LAW
1401 East 22nd Avenue
Tampa, Florida 33605
(813) 248-6400
melissa@mihoklaw.us
Secondary: jordan@mihoklaw.us

Attorney for Plaintiff


_____
Melissa C. Mihok, Esq.
Florida Bar No. 555851